**C. H. LANGDEAU, Receiver of ICT Insurance Company, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

No. 11010.

Court of Civil Appeals of Texas.
Austin.

Dec. 12, 1962.

Cecil C. Rotsch, Harold G. Kennedy, Austin, for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, George F. Lynch, Attys., Dept. of Justice, Washington, D. C., Ernest Morgan, U. S. Atty.,

William O. Murray, Jr., First Asst. U. S. Atty., San Antonio, for appellee.

HUGHES, Justice.

The ICT Insurance Company was adjudged insolvent and placed in receivership by the District Court of Travis County March 5, 1957. On June 7, 1957, the United States filed with the Receiver, C. H. Langdeau a proof of claim for withholding, employment and unemployment taxes assessed against the taxpayer in the amount of $19,910.81,[1] with respect to which liens arose and for which notices of liens were filed with the Clerk of Dallas County, Texas, as follows:

| "Kind of Tax Tax Withholding – | Int. | Total | List Signed | Notice of Lien Filed |
|---|---|---|---|---|
| 4th Qtr. 1956 $6,797.52 | $58.22 | $6,855.74 | 3/22/57 | 4/15/57 |
| Withholding & Employment 1st Qtr. 1957 11,599.81 | | 11,599.81 | 4/15/57 | 5/ 3/57 |
| Unemployment 1956–1957 1,278.20 | | 1,278.20 | 2/28/57 | 4/15/57" |

On February 28, 1958, the United States filed with the Receiver a proof of claim for additional unemployment taxes in the amount of $363.59, for which a lien arose on November 15, 1957.

By letter dated August 21, 1959, the Receiver submitted a check in the amount of $18,455.55 in payment of that portion of the claim filed on June 7, 1957, covering the withholding tax for the fourth quarter of 1956, including $58.22 in interest, and the withholding and employment tax for the first quarter of 1957. By this letter, the Receiver notified the Internal Revenue Service that the portion of the claim in the amount of $1,278.20 covering unemployment taxes for 1956 had been approved as that of a general unsecured creditor; that the claim, filed on February 28, 1958, in the amount of $361.57, had also been approved as a general unsecured creditor's claim; and that the claim for all interest accruing after the Insurance Company was placed in receivership had been rejected.

In November, 1959, the United States filed suit in the District Court of Travis County wherein it sought priority and allowance in full of its rejected claims. A hearing was had on April 23, 1962, and the court ordered that the claims of the United States filed with the Receiver on June 7, 1957 and February 28, 1958, "be first satisfied and allowed as prior and preferred claims, and that, before paying any of the claims of the general unsecured claims of ICT Insurance Company, the Receiver forthwith pay to the United States of America, amounts as follows:"

1. On the Claim filed June 7, 1957:

(a) $1,278.20 together with interest at the rate of six (6) per cent per annum from January 31, 1957, due on the unemployment tax assessed;

(b) $994.08 due as unpaid interest on $6,855.74 accruing from March 23, 1957, to August 22, 1959, on the

1. Including accrued interest to June 4, 1957, in the amount of $177.06.

withholding tax claim heretofore partially paid;

(c) $1,608.17, due as unpaid interest on $11,599,81, accruing from April 30, 1957 to August 22, 1959, on the withholding tax claim heretofore partially paid; and,

2. On the Claim filed February 27, 1958:

(a) $363.59 together with interest at the rate of six (6) per cent per annum on $361.67 from March 5, 1957.

From this judgment, the Receiver, C. H. Langdeau, prosecutes this appeal.

It is the position of the United States that its claims for taxes, including all interest thereon, assessed against the ICT Insurance Company are entitled to priority of payment ahead of the claims of general unsecured creditors of the insolvent taxpayer, both by reason of its paramount tax liens under Sections 6321 and 6322 of the Internal Revenue Code of 1954, and by reason of the priority accorded to the United States by Section 3466 of the Revised Statutes of the United States for the payment in cases of insolvency of debtors owing debts to it.

Appellant has three points which, as he states, present only this question, "In those cases in which the estate of an insolvent insurance company is insufficient to pay all of its debts, does the United States Government have a right to take out of the insolvent's assets enough to pay all of 'the debts due the United States,' including taxes, and interest accruing subsequent to the date of the commencement of delinquency proceedings, before any payment can be made to any other creditor, including wage claimants?"

Unquestionably, the answer to appellant's query would be in the affirmative if the words "insurance company", were dropped

and a different type of company substituted. See United States v. Miller, Tex.Civ.App., 331 S.W.2d 436, writ ref., n. r. e., cert. denied, 364 U.S. 880, 81 S.Ct. 168, 5 L.Ed. 2d 102, and authorities and federal statutes therein discussed.

The significance of the words "insurance company" comes from the fact that federal statutes,[2] known as the McCarran Act, or the McCarran-Ferguson Act, have given the States a free hand in the regulation and taxation of persons engaged in the insurance business. We quote the pertinent portions of these statutes:

"§ 1011. Declaration of policy

"Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."

"§ 1012. * * *

"(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: * * *."

If the State of Texas has enacted statutes which regulate the "business of insurance", then these statutes will prevail, even as to the United States, unless Congress has otherwise provided in legislation specifically pertaining to insurance.

2. Act of March 9, 1945, C. 20, Sec. 1, 59 Stat. 33 (15 U.S.C. 1958 ed., §§ 1011–1015.)

In 1951 Texas enacted an Insurance Code (Ch. 491, 52nd Leg.Reg.Sess., p. 868), V.A.T.S., the caption reading in part:

"An Act arranging the Statutes of this State affecting the business of insurance in appropriate Chapters and Articles into a consistent whole and under a single code; making such editorial changes in context as are necessary to that accomplishment; * * *."

The emergency clause of this Act reads, in part,

"The fact that the present laws relating to insurance are in many respects inadequate, containing in many instances overlapping, ambiguous and inconsistent provisions and seriously interferring with the operation of the insurers as well as jeopardizing the insureds and protection of the public; and the further fact that jurisdictional uncertainties arising from the United States Supreme Courts' decision holding that the business of insurance transacted across state lines is interstate commerce within the meaning of the Federal Constitution, making it practicable and necessary that such laws shall be made clear, concise, adequate and consistent for the protection of the insuring public as well as for the protection of those engaged in the insurance business, * * *."

In 1955, the above Act was amended.[3]

We quote from its caption:

"An Act providing for the amendment of Article 21.28 of the Texas Insurance Code of 1951, such Act concerning the liquidation, rehabilitation, reorganization, or conservation of insurers, and placing same under the Board of Insurance Commissioners * * *."

In the amending Act there appear these provisions:

"(b) 'Delinquency proceeding' means any proceeding commenced in any court of this State against an insurer for the purpose of liquidating, rehabilitating, reorganizing or conserving such insurer." [Art. 21.28, V.A.C.S., Sec. 1, (b).]

"(e) Conducting of Business. Upon taking possession of the assets of a delinquent insurer the receiver shall, subject to the direction of the court, immediately proceed to conduct the business of the insurer, or to take such steps as may be necessary to conserve the assets and protect the rights of policyholders and claimants for the purpose of liquidating, rehabilitating, reinsuring, reorganizing or conserving the affairs of the insurer." [Art. 21.28, id., Sec. 2, (e).]

"All wages actually owed to employees of an insurer against whom a proceeding under this Article is commenced, for services rendered within three (3) months prior to the commencement of such proceeding not exceeding Three Hundred Dollars ($300) to each employee shall be paid prior to the payment of every other debt or claim, and in the discretion of the court may be paid as soon as practicable after the proceeding has been commenced, except that at all times there shall be reserved such funds as will be sufficient for the expenses of administration by the receiver." [Art. 21.28, id., Sec. 6.]

"(b) Interest. Interest shall not accrue on any claim subsequent to the date of the commencement of delinquency proceedings." [Art. 21.28, id., Sec. 8, (b).]

With respect to Sec. 6 of Art. 21.28, supra, we are of the opinion that it does

---

3. Ch. 267, p. 737, Acts 54th Leg., Reg.Sess.1955.

not regulate the business of insurance.[4] It regulates the claims for wages of employees of an insurer which is in receivership. It is for their benefit and in their aid alone. It lends no help to the continuance of the business of insurance by the company. In fact, this statute authorizes such wage claimants to exhaust the funds of the company except that enough to satisfy administration expenses shall be retained. This is not a regulation of the insurance business; it is a priority established for a class of creditors of an insurance company. There are many statutes regulating the rights of persons who may have claims against an insurance company such as laborers, mechanics, materialmen, landlords, yet it would hardly be contended that these laws regulate the insurance business simply because they may be invoked against an insurance company.

■ If the preference given by Sec. 6 is to prevail over the tax claim of the government, then a State may not only prefer employees of the company, but may prefer every other claim and make the debt due the United States last. We find nothing in the McCarran Act to warrant this result.

In the construction of the McCarran Act we have been influenced by the opinion in United States v. Emory, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315, where the Court in construing and applying Sec. 3466, U.S.C.A., supra, in an equity receivership proceeding in a State Court stated, "Just such proceedings as this, therefore, are governed by the plain command of § 3466 that 'debts due to the United States shall be first satisfied.' The purpose of this section is 'to secure adequate public revenues to sustain the public burden' * * * and it is to be construed liberally in order to effectuate

that purpose. * * * We are aware of no canon of statutory construction compelling us to hold that the word 'first' in a 150 year old statute means 'second' or 'third', unless Congress later has said so or implied it unmistakably. * * * Only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466."

We are also of the opinion that the Texas Statute denying interest on claims after commencement of delinquency proceedings is not applicable to a tax claim of the United States.

Interest on taxes due the United States is a part of the tax obligation [5] and is expressly secured by the lien provided in Sec. 6321, 26 U.S.C.A., which reads:

"§ 6321. Lien for taxes

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any cost that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

A person who owes interest is a debtor, the interest being the debt. As such, it is within the provisions of Sec. 191, 31 U.S.C.A., Revised U.S.Statutes, Sec. 3466, which provides, in part, that when any person who is indebted to the United States is insolvent, the debt due the United States shall be first satisfied.

■ We find nothing in the McCarran Act, certainly not "unmistakably", to war-

---

4. The Court in California League of Independent Insurance Producers v. Aetna Cas. & Surety Co., D.C., 175 F.Supp. 857, gave its understanding of the McCarran Act in these words:

"This Court is of the opinion that a State regulates the business of insurance within the meaning of § 1012(b)

when a State statute generally proscribes * * * or permits or authorizes certain conduct on the part of the insurance companies."

5. See New York v. Saper, infra, 336 U.S. 328, n. 18, 69 S.Ct. 554, 93 L.Ed. 710.

rant us in holding that the United States has consented that a state has been given authority to extinguish a tax obligation or debt due the United States.

We are also convinced that the disallowance of interest on claims against insurance companies in receivership cannot be accomplished under the guise that it is a regulation of the business of insurance. We find no relationship between the business of insurance and whittling claims owed by an insolvent insurer.

Appellant cites New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, which holds that under the National Bankruptcy Act tax claims of the United States do not bear interest after the date of bankruptcy.

The simple answer to this authority here is that this case is not subject to nor is it controlled by the Bankruptcy Act. Lest we be misunderstood, however, we make these observations. We are not concerned with; though we approve, the policy of the Bankruptcy Act or the policy of Texas in providing that interest on all claims shall cease when bankruptcy occurs or delinquency proceedings are commenced.

The problem we have and must decide is whether or not the Texas Statute in providing for the cessation of interest, as stated, is an Act regulating the business of insurance. We believe, and hold, that it is not such an act. It regulates the rights of creditors of an insolvent insurance company, a company which is incapable of doing any business itself and which is in the process of liquidation.

The Federal Bankruptcy Act "* * * primarily provides a way to gather the unencumbered assets of an insolvent debtor for distribution among his unsecured creditors * * *." Simonson v. Granquist, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed. 557.

The Bankruptcy Act does not purport to regulate the business of any bankrupt. It does not do so when it denies interest on a claim after bankruptcy. By the same reasoning, it would seem that the Texas Stat-

ute when it denies interest on a claim subsequent to the commencement of delinquency proceedings against an insolvent insurer does not regulate the business of insurance.

The judgment of the Trial Court is affirmed.