THOMPSON, Judge.
Vola G. Steele filed an action against First Deposit National Bank and several other banks (hereinafter collectively referred to as “the banks”) alleging that the banks were selling insurance in contravention of § 27-3-1, Ala.Code 1975. In her action, Steele alleged that “Credit Protection,” a debt-deferral product offered by the banks, constituted a contract of insurance and that the banks violated Alabama *302 law by selling the credit protection without the requisite license from the Alabama Department of Insurance. Steele later sought to have the case certified as a class action.
The banks moved for a summary judgment. After conducting a hearing, the trial court entered a summary judgment in favor of the banks, finding that the credit-protection contract did not constitute insurance and, therefore, that it was not subject to regulation by the State of Alabama. Steele appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7, Ala.Code 1975.
A motion for summary judgment is properly granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Chatham v. CSX Transportation, Inc., 613 So.2d 341, 343 (Ala. 1993). Evidence must be viewed in a light most favorable to the nonmoving party, and all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the nonmov-ant. Id. After the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to present evidence creating a genuine issue of material fact. Id. The nonmoving party, to create a genuine issue of material fact, is required to present substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
The banks offer credit protection in connection with their credit-card program. Credit protection allows the borrower to suspend his obligation to make payments on the debt, for up to nine months, upon the occurrence of certain events, including involuntary unemployment, hospitalization, accident, sickness, or disability. Credit protection does not cancel or forgive any portion of the borrower’s debt owed to the banks. Rather, the borrower’s account is “frozen,” that is, interest ceases to accrue on the account and the borrower may not obtain additional credit from the account. Credit protection is an optional product. The borrower pays $.49 per $100 of the account’s outstanding balance, to obtain credit protection;[1] the maximum a borrower pays for credit protection on any balance is $19.95 per month.
Generally, where federal law and state law conflict, a federal law preempts a conflicting state law. U.S. Const., art. VI, cl. 2; American Deposit Corp. v. Schacht, 84 F.3d 834 (7th Cir. 1996), cert. denied, 519 U.S. 870, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996). The National Bank Act grants national banks the power to exercise “all such incidental powers as shall be necessary to carry on the business of banking.” 12 U.S.C. § 24 (Seventh). Steele argues that the credit protection offered by the banks is actually insurance and that the agreement regarding credit protection is therefore subject to state regulation pursuant to the McCarran-Fergu-son Act, 15 U.S.C. § 1012.
The McCarran-Ferguson Act “ ‘overturn[ed] the normal legal rules of preemption’ by imposing a rule ‘that state laws enacted for the purpose of regulating the business of insurance do not yield to conflicting federal statues unless the federal statute specifically provides otherwise.’ ” American Deposit Corp. v. Schacht, 84 F.3d 834, 837-38 (7th Cir. 1996) (quoting United States Dep’t of Treasury v. Fabe, 508 U.S. 491, 507, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993)). The McCarran-Fer-guson Act provides in part:
“[ (a) ] The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
*303 “[ (b) ] No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.”
15 U.S.C. § 1012. Thus, under the McCarran-Ferguson Act, federal law does not preempt the states’ regulation or taxation of “the business of insurance.” Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979).
The issue in this case is whether offering credit protection is an “incidental power” of the banks pursuant to the National Bank Act or whether, as Steele argues, credit protection is insurance and therefore subject to state regulation pursuant to the McCarran-Ferguson Act, 15 U.S.C. § 1012. In order to answer that question, this court must resolve three issues: “(1) whether the pertinent sections of [Alabama’s insurance code] were enacted ‘for the purpose of regulating the business of insurance;’ (2) whether [credit protection] is properly considered ‘the business of insurance;’ and (3) whether the pertinent provisions of the Bank Act ‘specifically relate to the business of insurance.’” American Deposit Corp. v. Schacht, 84 F.3d 834, 838 (C.A.7th 1996).
It is undisputed that Alabama’s insurance code, and particularly § 27-3-1, Ala. Code 1975, which prohibits the sale of insurance without a license, were enacted for the purpose of regulating the business of insurance. The main dispute in this case regards the second of the Schacht criteria, whether the offering of credit protection by the banks is actually “the business of insurance.”
The question whether a product is insurance for the purposes of the McCarran-Ferguson Act is a federal question. OCC Interpretative Letter No. 623 (May 10, 1993) (citing Sec. & Exch. Comm’n v. Variable Annuity Life Ins. Co., 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959)). See also First Nat’l Bank of Eastern Arkansas v. Taylor, 907 F.2d 775, 780, n. 8 (8th Cir. 1990) (“[S]tate law defining insurance is not controlling on the issue of whether an activity falls within the ‘business of insurance’ as that term is used in the McCar-ran-Ferguson Act.”). The United States Supreme Court set forth three criteria for determining whether a particular practice or product constitutes “the business of insurance”: “first, whether the practice [or product] has the effect of transferring or spreading a policyholder’s risk; second, whether the practice [or product] is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice [or product] is limited to entities within the insurance industry.” Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982).
It is clear that credit protection does not transfer or spread the borrower’s risk. The borrower’s debt remains intact. His obligation to make payments on that debt, and the accumulation of interest on the debt, are temporarily suspended. Also, credit protection is not an integral part of the relationship between a bank as a lender and Steele as a borrower. Credit protection is an optional contract provision that the borrower may elect to purchase; it is not a term or condition of borrowing. Further, credit protection is not a product that is limited exclusively to entities within the insurance industry.
Thus, we conclude that the credit-protection contract is not “the business of insurance,” under the criteria set forth in Pireno, supra. This holding is further supported by the interpretations of the Office of the Comptroller of the Currency (the “OCC”). The OCC has addressed the issue whether the issuance of credit-cancellation agreements, which cancel a borrower’s debt upon the happening of certain contingencies, are within the incidental powers of the national banks. The OCC’s interpretation of the National Bank Act is entitled to much weight:
*304 “In addition to enumerating specific powers, including the lending of money, the National Bank Act grants national banks the power to exercise ‘all such incidental powers as shall be necessary to carry on the business of banking.’ 12 U.S.C. § 24 (Seventh). The Comptroller, through 12 C.F.R. § 7.7495, has interpreted ‘incidental powers’ to include the offering of debt cancellation contracts, and the Supreme Court has made clear that the Comptroller’s interpretation of the National Bank Act must be given ‘great weight’:
“ ‘It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. The Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of this principle with respect to his deliberative conclusions as to the meaning of these laws. See First National Bank v. Missouri, 263 U.S. 640, 658 [44 S.Ct. 213, 215, 68 L.Ed. 486] [1924].’
“Clarke v. Securities Industry Ass’n, 479 U.S. 388, 403-04, 107 S.Ct. 750, 759-60, 93 L.Ed.2d 757 (1987) (quoting Investment Co. Institute v. Camp, 401 U.S. 617, 626-27, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971)). The Comptroller’s determination as to what activities are authorized under the National Bank Act should he sustained if reasonable. See Clarke, 479 U.S. at 406, 409, 107 S.Ct. at 761, 762, 93 L.Ed.2d 757.”
First Nat’l Bank of Eastern Arkansas v. Taylor, 907 F.2d 775, 777-78 (8th Cir. 1990) (emphasis added). See also Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 739, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (“It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering. ... [T]hat practice extends to the judgments of the Comptroller of Currency with regard to the meaning of the banking laws.”).
The OCC issued an Interpretive Letter concluding that debt-cancellation agreements are incidental to the authority of national banks to make loans and that they do not constitute “insurance” for the purposes of the McCarran-Ferguson Act. OCC Interpretive Letter of Nov. 2, 1992. In determining that national banks could offer debt-deferral agreements such as the one at issue in this case, under the National Bank Act, the OCC determined that debt-deferral agreements resemble, but are more limited than, the debt-cancellation agreements. OCC Interpretive Letter # 827 (April 3,1998).
In First Nat’l Bank of Eastern Arkansas v. Taylor, supra, the United States Court of Appeals for the Eighth Circuit held that debt-cancellation agreements offered by a bank do not constitute the “business of insurance,” and, instead, are within the incidental powers granted by the National Bank Act. In this case, the product offered by the bank does not even cancel the debt, as did the product in Taylor. Rather, the payments and accumulation of interest on the existing debt are merely suspended temporarily. Thus, the banks’ offering of a debt-suspension agreement does not constitute the “business of insurance.”
Because credit protection does not constitute the “business of insurance,” the McCarran-Ferguson Act does not apply and does not preempt the National Bank Act. American Deposit Corp. v. Schacht, 84 F.3d 834, 838 (C.A.7th 1996). The OCC has stated that national banks may offer debt-deferral agreements “because [doing so] is part of banks’ expressly-authorized lending function and also because it is incidental to the business of banking.” OCC Interpretative Letter # 827 (April 3, 1998) (emphasis added). Thus, it is clear that the National Bank Act governs this case and preempts Alabama law regulating insurance. The trial court’s judgment that the credit-protection contract is not sub *305 ject to regulation by the State of Alabama through the McCarran-Ferguson Act is due to be affirmed.
AFFIRMED.
YATES and CRAWLEY, JJ., concur.
ROBERTSON, P.J., and MONROE, J., concur in the result.

. Retired customers pay $.39 per $100 of the account's outstanding balance.