# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-1343

_____

Guardian Flight LLC

*Plaintiff  Appellant*

v.

Jon Godfread, in his capacity as North Dakota Insurance Commissioner; Wayne Stenehjem, in his capacity as North Dakota Attorney General

*Defendants   Appellees*

------------------------------

America's Health Insurance Plans; National Association of Insurance Commissioners

*Amici on Behalf of Appellee(s)*

_____

No. 19-1381

_____

Guardian Flight LLC

*Plaintiff   Appellee*

v.

Jon Godfread, in his capacity as North Dakota Insurance Commissioner; Wayne Stenehjem, in his capacity as North Dakota Attorney General

*Defendants   Appellants*

------------------------------

National Association of Insurance Commissioners; America's Health Insurance Plans

*Amici on Behalf of Appellant(s)*

_____

Appeals from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: June 16, 2020
Filed: March 17, 2021

_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Two provisions of North Dakota Senate Bill 2231 (SB 2231) are at issue in this case. The first prohibits air ambulance providers from directly billing out-of-network insured patients for any amount not paid for by their insurers (the payment provision). N.D. Cent. Code § 26.1-47-09(3). The second prohibits air ambulance providers or their agents from selling subscription agreements (the subscription provision). N.D. Cent. Code § 26.1-47-08. Guardian Flight LLC filed this declaratory judgment action, claiming that both provisions are preempted under the Airlines Deregulation Act (ADA). Defendants Jon Godfread, in his capacity as North Dakota Insurance Commissioner, and Wayne Stenehjem, in his capacity as North Dakota Attorney General, responded that, even if preempted, the provisions were saved under the McCarran-Ferguson Act.

Ruling on cross-motions for judgment on the pleadings, the district court concluded that although the ADA preempted both provisions, the McCarran-Ferguson Act saved the subscription provision. We agree with the court's ADA preemption analysis. We hold that the McCarran-Ferguson Act does not apply, however, because the provisions were not enacted "for the purpose of regulating the business of insurance." Accordingly, we affirm in part, reverse in part, and remand with instructions to enter judgment in favor of Guardian Flight.

## I. Background

Guardian Flight is a federally licensed air carrier that provides air ambulance services in North Dakota. Air ambulances transport critically ill or injured patients to hospitals that are able to provide the level of care that the patients require. First responders, attending physicians, and hospital emergency departments may call on air ambulances to transport patients and to provide in-flight medical care. Because air ambulances are used in emergencies, patients usually do not choose the provider.

In accordance with federal and state law, Guardian Flight provides air ambulance services regardless of whether the patients are insured or able to pay. Guardian Flight receives payment for its services from various sources, including private health insurance companies, Medicaid and Medicare, and patients themselves. The amount a private insurer pays depends on the patient's coverage and whether Guardian Flight has entered a contract with the insurer to join the insurer's provider network. Medicare and Medicaid reimbursement rates are substantially less than the amount Guardian Flight charges, and Guardian Flight recovers little from uninsured patients.

When a privately insured patient receives air ambulance services from an in-network provider, the insurer and provider have agreed upon the rates for those services. An out-of-network provider sets its own rates, however, and then bills the

insured for the difference between the amount charged and the amount the insurer paid—a practice known as balance billing. Because air ambulance services are expensive and because rates have increased dramatically in recent years, the balance owed by the insured can be substantial.[1]

Several privately insured individuals complained to the North Dakota Insurance Department regarding unexpected bills from air ambulance providers. According to the forty-some complaints received between 2014 and early 2018, insureds often were billed more than $20,000 for air ambulance transport—and sometimes more than $40,000—which represented the balances remaining after the insurers paid their portions. The North Dakota Legislative Assembly attempted to address balance billing in 2015, but the district court enjoined enforcement of the legislation. See Valley Med Flight, Inc. v. Dwelle, 171 F. Supp. 3d 930 (D.N.D. 2016). As set forth more fully below, SB 2231 represents North Dakota's second attempt to address the practice.

Before the 2017 enactment of SB 2231, Guardian Flight offered a subscription membership program in North Dakota as part of the AirMedCare Network, an affiliation of four air ambulance providers owned by the same parent company. The program cost subscribers less than $100 per year and guaranteed that if an AirMedCare Network ambulance provided transportation, the enrollee would have "no out-of-pocket flight expenses." Guardian Flight would instead deem prepaid any air ambulance costs beyond those covered by insurance, other benefits, or third parties. The subscription agreement did not guarantee that Guardian Flight or an

---

[1]Air ambulance providers are not permitted to bill Medicare patients for ambulance services beyond deductibles and coinsurance requirements. 42 C.F.R. § 414.610. Air ambulance providers that participate in a state's Medicaid program are required to accept the Medicaid payment as payment in full and are prohibited from collecting any additional amounts from Medicaid patients, other than authorized cost-sharing amounts. 42 C.F.R. § 447.15.

affiliated provider would be dispatched to transport an ill or injured subscriber, however, and Guardian Flight would not pay for any services provided by an unaffiliated air ambulance.

SB 2231's payment provision prohibits air ambulance providers from balance billing and deems payment by the insurer to be full and final payment. It provides:

> For purposes of settling a claim made by the insured for air ambulance services, a payment made by an insurer under the plan in compliance with this section is deemed to be the same as an in-network payment and is considered a full and final payment by the insured for out-of-network air ambulance services billed to the insured.

N.D. Cent. Code § 26.1-47-09(3). The subscription provision prohibits air ambulance subscription agreements and authorizes a civil fine of up to $10,000 for violations. It states, in relevant part:

> An air ambulance provider, or an agent of an air ambulance provider, may not sell, solicit, or negotiate a subscription agreement or contract relating to services or the billing of services provided by an air ambulance provider.

N.D. Cent. Code § 26.1-47-08.

Guardian Flight filed suit in January 2018, seeking a permanent injunction prohibiting the defendants from enforcing the provisions. After Godfread and Stenehjem answered the complaint, the parties moved for judgment on the pleadings, which, as set forth above, the district court granted and denied in part. The defendants were permanently enjoined from enforcing or seeking to enforce the payment provision, with the subscription provision being allowed to remain in effect.

## II. Discussion

### A. Standard of Review

We review *de novo* the district court's determination that the ADA preempts North Dakota's payment and subscription provisions, as well as its determination that the McCarran-Ferguson Act does not apply to the payment provision but saves the subscription provision from preemption. See Watson v. Air Methods Corp., 870 F.3d 812, 815 (8th Cir. 2017) (en banc) (reviewing *de novo* whether claim was preempted by the ADA); Ludwick v. Harbinger Grp., Inc., 854 F.3d 400, 403 (8th Cir. 2017) (reviewing *de novo* whether claim was saved under the McCarran-Ferguson Act); see also Lansing v. Wells Fargo Bank, N.A., 894 F.3d 967, 970 (8th Cir. 2018) (reviewing *de novo* grant of judgment on the pleadings).

### B. ADA Preemption

The ADA expressly preempts states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b). The Supreme Court has defined the phrase "related to" to give effect to the statute's "broad pre-emptive purpose." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992). Accordingly, a state law is preempted by the ADA if it "ha[s] a connection with or reference to" an air carrier's price, route, or service. Id. at 384.

Godfread and Stenehjem argue that the ADA does not preempt the payment and subscription provisions, contending that the provisions are "too tenuously related to airline rates to be preempted." Appellees' Br. 41. The payment provision effectively caps certain air ambulance prices, however, by mandating the acceptance by an out-of-network provider of the insurer's payment and prohibiting the provider from billing the insured for any remaining balance. The insurer must reimburse out-

of-network providers at a rate "equal to the average of the insurer's in-network rates for air ambulance providers," N.D. Cent. Code § 26.1-47-09(1), with the air ambulance service provider being required to accept that rate. Similarly, the subscription provision prohibits air ambulance providers from entering into price-establishing subscription agreements with consumers. These two provisions are clearly "related to" and "hav[e] a connection with" the price that air ambulance providers charge for their services. See Air Evac EMS, Inc. v. Cheatham, 910 F.3d 751, 767 (4th Cir. 2018) (holding that state statutes establishing state-paid maximum amounts to air ambulance providers and limiting the providers' ability to seek recovery from anyone else "clearly have a connection to air ambulance prices"). We thus conclude that the ADA preempts both the payment provision and the subscription provision. See id. at 769-70; Bailey v. Rocky Mountain Holdings, LLC, 889 F.3d 1259, 1272 (11th Cir. 2018) (holding that the ADA preempts the enforcement of a state statute prohibiting an air ambulance provider's balance billing); EagleMed LLC v. Cox, 868 F.3d 893, 902-04 (10th Cir. 2017) (holding that the ADA preempted a state statute that "expressly establish[ed] a mandatory fixed maximum rate that [would] be paid by the State for air-ambulance services provided to injured workers covered by the Worker's Compensation Act").

## C. McCarran-Ferguson Act Inverse Preemption

The McCarran-Ferguson Act precludes inadvertent federal preemption of state insurance-regulating statutes. See 15 U.S.C. § 1012(b). The first clause of section 2(b) of the Act provides, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . ." Id. Having determined that the ADA preempts (and thus supersedes) the disputed North Dakota statutory provisions and because the ADA does not specifically relate to the business of insurance, we must determine whether North Dakota's payment and subscription provisions were enacted "for the purpose of

regulating the business of insurance." If they were, the McCarran-Ferguson Act saves them from federal preemption.

The Supreme Court has twice considered whether a state law was enacted "for the purpose of regulating the business of insurance." In Securities & Exchange Commission v. National Securities, Inc., the SEC attempted to unwind an allegedly fraudulent merger of two insurance companies. 393 U.S. 453 (1969). National Securities argued that the McCarran-Ferguson Act barred the SEC action because, as required by state law, the state director of insurance had approved the merger. Id. at 457. The Supreme Court determined that because the state laws at issue were "aimed at protecting the interests of those who own securities in insurance companies," id. at 458, rather than protecting or regulating the relationship between the insurer and the insured, the McCarran-Ferguson Act did not apply, id. at 460.

In United States Department of Treasury v. Fabe, the Supreme Court considered a state statute that gave claims of policyholders priority over those of the federal government. 508 U.S. 491 (1993). The Court determined that the statutory scheme protected policyholders "by ensuring the payment of [their] claims despite the insurance company's intervening bankruptcy." Id. at 504. The scheme thus safeguarded the performance of insurance contracts, an essential part of the "business of insurance." Id. at 505. The Court concluded that "[t]he broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the end, intention, or aim of adjusting, managing, or controlling the business of insurance." Id. (internal quotation marks and citation omitted). The state statute thus was saved from preemption under the McCarran-Ferguson Act to the extent it protected policyholders. Id. at 508-09.

In deciding Fabe, the Supreme Court considered Group Life & Health Insurance Co. v. Royal Drug Co., 440 U.S. 205 (1979), and Union Labor Life Insurance Co. v. Pireno, 458 U.S. 119 (1982), both of which concerned whether a

practice constituted the "business of insurance" for purposes of the second clause of section 2(b) of the Act, which provides that federal antitrust laws "shall be applicable to the business of insurance to the extent that such business is not regulated by State law." 15 U.S.C. § 1012(b). Pireno set forth the criteria relevant in determining whether a practice constitutes "the business of insurance."

> *[F]irst*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry.

458 U.S. at 129. The performance of insurance contracts in Fabe satisfied the Pireno test, but the Court refused "[t]o equate laws 'enacted . . . for the purpose of regulating the business of insurance' with the 'business of insurance' itself." 508 U.S. at 504. As the Court explained, the category of laws enacted for the purpose of regulating the business of insurance "necessarily encompasses more than just the 'business of insurance.'" Id. at 505.

We conclude that the payment provision was enacted not for the purpose of regulating the business of insurance, but rather for the purposes of reducing air ambulance providers' permissible prices and of prohibiting the practice of balance billing. Air ambulance pricing and billing practices do not have the effect of transferring or spreading a policyholder's risk. Nor are they an integral part of the policy relationship between the insurer and the insured. The insurance company will have already completed its policy obligations to the insured before the insured receives a bill for the balance of air ambulance charges. The payment provision thus regulates the relationship between the insured and the service provider and does not "possess the end, intention, or aim of adjusting, managing, or controlling the business of insurance." See Fabe, 508 U.S. at 505 (internal quotation marks and citation omitted). Accordingly, the McCarran-Ferguson Act does not bar ADA preemption of

the payment provision. See Bailey, 889 F.3d at 1274 ("Because the balance billing provision concerns the relationship between the insured and medical providers—not the relationship between the insurer and insured—the MFA does not reverse the ADA's preemptive effect in this case."); see also Fabe 508 U.S. at 501 ("[T]he focus of McCarran-Ferguson is upon the relationship between the insurance company and its policyholders.").

We also hold that the subscription provision was not enacted for the purpose of regulating the business of insurance. In so holding, we find First National Bank of Eastern Arkansas v. Taylor, 907 F.2d 775 (8th Cir. 1990), controlling. In Taylor, we concluded that First National Bank's debt cancellation contracts did not involve "the business of insurance" under the first clause of section 2(b) of the McCarran-Ferguson Act. Id. at 780. We explained that the Act "was designed to preserve traditional state regulation and taxation of insurance companies," id. at 779, not banks, and that debt-cancellation contracts did not implicate the "primary and traditional concern behind state insurance regulation—the prevention of insolvency," id. at 780.

Like the debt-cancellation contracts in Taylor, the subscription agreements here do not involve traditional state regulation of insurance companies, nor do they address the concern of insurer insolvency. See id.; Royal Drug Co., 440 U.S. at 226 ("States which regulated prepaid health-service plans at the time the Act was enacted either exempted them from the requirements of the state insurance code or provided that they shall not be construed as being engaged in the business of insurance under state law." (internal quotation marks and citation omitted)). Although the subscription agreements transfer some risk from the subscriber to Guardian Flight, they are not insurance contracts. They do not guarantee that Guardian Flight or an affiliated provider will provide services to subscribers needing air ambulance transport. Nor do the subscription agreements require Guardian Flight to indemnify the subscriber or make post-service provided payments to a third party. Guardian

-10-

Flight thus does not incur an insurance company's investment risk. Instead, for a flat fee, Guardian Flight considers prepaid any services that it (or its affiliates) may render to members, which is a practice not limited to insurance-industry entities. See Air Evac EMS, Inc. v. Dodrill, No. 2:21-cv-00105, 2021 WL 781679, at *8 (S.D.W. Va. Mar. 1, 2021) (order enjoining state insurance commissioner from regulating an air ambulance membership program) (comparing air ambulance memberships to auto club memberships that provide roadside service and to home and other extended warranties that cover the expense of repairing or replacing appliances or other items). Because North Dakota's subscription provision seeks to regulate the relationship between only a consumer and an air ambulance company, it cannot be said that it was enacted for the purpose of regulating the business of insurance. See Nat'l Sec., Inc., 393 U.S. at 460; Fabe, 508 U.S. at 505; Taylor, 907 F.2d at 779-80. The McCarran-Ferguson Act thus does not save the subscription agreement from ADA preemption.

## Conclusion

The judgment is affirmed in part and reversed in part, and the case is remanded for entry of judgment in favor of Guardian Flight.

_____